IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 99-cv-00085-RPM
(Consolidated with Civil Action No. 99-cv-00858-RPM)

TRACY MATTHEWS,

                Plaintiff,

v.

JOHN POTTER, Postmaster General, United States Postal Service,
WILLIE WASHINGTON and
EARL MAYBERRY,
                Defendants.

_____

FINDINGS, CONCLUSIONS AND ORDER
_____

Tracy Matthews is a postal clerk working at the Bulk Mail Center (BMC) in Commerce City, Colorado. He began that employment in September, 1986. Mr. Matthews is a member of the American Postal Workers Union ("APWU"), AFL-CIO, Local 7029, and has been active in union affairs, serving as a steward several times in which role he aggressively represented craft employees in grievances. Although he was no longer steward in April,1997, he assisted a co-worker Ersilia Rivera in a sex discrimination complaint about a Letter of Warning issued to her under date of April 3, 1997, by Supervisor Patricia Reece for tardiness and one day's absence for the period from January 6, 1997, to March 24, 1997. Ms. Reece signed that letter on April 7, 1997, after a "due process" interview with Ms. Rivera. On April 15, 1997, Ms.

1

Reece had another "due process" discussion with Ms. Rivera about reporting late. Most of her tardy reporting was within a five-minute leeway rule which permitted employees to clock in up to five minutes after the reporting time without being considered late. On that basis, a Step One settlement was reached on April 28, 1997, at a meeting between Ms. Reece and an APWU steward, not Mr. Matthews, resulting in the Letter of Warning of April 3, 1997, being reduced to an "official discussion" on January 1, 1998, if there were no other discipline for late reporting. At the time of the settlement, Ms. Reece knew that she was going to discipline Ms. Rivera for late reporting after April 3,1997.

On May 13, 1997, Ms. Reece issued another Letter of Warning to Ms. Rivera for failure to follow instructions, asserting that on April 22, 1997, Ms. Rivera was smoking in a restricted area. On the next day, May 14, 1997, Ms. Reece issued yet another Letter of Warning to Ms. Rivera for failure to follow instructions, based on late reporting. That Letter of Warning was also the subject of a Step One agreement on May 28, 1997, removing the May 14, 1997, letter.

At some later time, Ersilia Rivera changed from the day shift, Tour 2, to the night shift, Tour 1, and came under the supervision of Supervisor Mike Whiltsie. He issued a fourteen-day suspension, dated May 8, 1998, on May 13, 1998, based on a reported confrontation between Ms. Rivera and another female employee.

Ms. Rivera also complained about Mr. Whiltsie's derogatory comments about women in the workplace during her EEO proceedings.

2

Ultimately, Ms. Rivera's four complaints went to a hearing before an administrative judge ("AJ") who issued a decision on February 7, 2000 (Exhibit 161). Tracy Matthews was the complainant's representative at that hearing. The AJ concluded that the April 7, 1997, Letter of Warning from Supervisor Reece was discriminatory because Ms. Reece did not give comparable discipline to male workers who had worse attendance records. Those male workers were Steve Kuckelman, Jerry Smith, and Tim Roscover. In the AJ's decision, he referred to the evidence submitted at the hearing, including testimony of Michael Orrino, then a distribution clerk and former steward, that Supervisor Reece favored men over women and the AJ referred also to a comment made by Ms. Reece to Mr. Matthews as evidence of gender animus toward Ms. Rivera supporting a finding that the Letter of Warning was issued as a pretext for sex discrimination. The AJ ruled against Ms. Rivera on her claims on the May 14, 1997, Letter of Warning; for comments by Supervisor Whiltsie; for her suspension and for retaliation.

The claims by Tracy Matthews that were tried before this Court is that his employer issued a series of disciplinary actions against him in retaliation for his support of Ms. Rivera in her EEO proceedings in violation of Title VII of the Civil Rights Act of 1964, as amended, and that his supervisor, Willie Washington, violated the Family Medical Leave Act by denying him leave for his absence from work on November 14, 1998.

The disciplinary actions in question are a Letter of Warning issued to Tracy

Matthews by Pat Reece on May 16, 1997, (Exhibit 1), a seven-day suspension dated June 2, 1997, issued on June 13, 1997 by Ms. Reece (Exhibit 10), a fourteen-day suspension dated July 18, 1997, issued on July 23, 1997, by Ms. Reece (Exhibit 16), a Notice of Removal dated February 6, 1998, issued on February 13, 1998, by Supervisor Clinton Perry (Exhibit 25), and a fourteen-day suspension dated June 29, 1998, issued on July 10, 1998, by Mr. Perry (Exhibit 31).

All of these disciplinary actions were approved by David Sapp, a manager, by his denial of grievances filed by the APWU on behalf of Mr. Matthews for violations of the Collective Bargaining Agreement ("CBA") (Exhibit 144). Ultimately the grievances were settled by an Arbitration Settlement Agreement, dated April 16, 1998 (Exhibit 30). The agreement rescinded the letter of warning and the suspensions. The Notice of Removal was reduced to a seven-day suspension to remain in Mr. Matthews' file for two years from February 13, 1998. Back pay was awarded for pay lost during the fourteen-day suspension and as a result of the notice of removal.

The evidence demonstrated that in 1997 and 1998 the BMC was a very difficult workplace. The physical setting contributed to the stress and tension felt by those who worked there both as supervisors and craft employees. The work to be accomplished was the sorting of bulk mail, much of which was packaged catalogs and magazines. The mail sorting was accomplished by the use of two machines, Small Parcels and Bundled Sorters (SPBS) consisting of conveyors feeding the bulk mail up to work stations where clerks keyed in ZIP codes resulting in the distribution

of the bundles and packages to mail handlers. The clerks shared the duties of keying and handling, alternating their positions during their shift. There were three shifts. Tour 1, the night shift, ended at 6:45 a.m. The Tour 2 shift began at 6:15 a.m. There was then a one-half hour overlap.

There was considerable noise in the operations and the keying function was both monotonous and stressful. The supervisors involved in this litigation were long-term employees who rose through the ranks and were authoritarian in their treatment of the employees they supervised. The Postal Service had an Employee Labor Relations manual ( ELM) articulating standards of conduct (Exhibit 105), including the requirement of obedience to orders. Section 666.51 provided that the employees must obey the instructions of their supervisors and if the propriety of a supervisor's order is questioned, the employee must carry out the order and immediately file a protest in writing to the official in charge of the installation. Article 16 of the CBA (Exhibit 144) established a progressive discipline procedure beginning with a "Discussion" for minor offenses, then a Letter of Warning followed by a suspension of fourteen days or less and suspensions for more than fourteen days. Section 8 of that Article provides that no supervisor may impose suspension or discharge unless the proposed disciplinary action has been reviewed and concurred in by the installation head or designee.

The evidence in this case demonstrates that in issuing the disciplinary actions to the plaintiff for failures to follow instructions in this case, the supervisors acted

5

subjectively, without investigation into the facts and their actions taken were approved without investigation or questioning. Throughout the time relevant to this case there was an adversarial relationship between the supervisors and the craft employees. The leaders of the union were militant in aggressively protesting and grieving perceived violations of the CBA and work rules. John Kelly, formerly APWU field officer at the regional level, testified that more grievances came to him at the Step Three level from the BMC than any other postal installation. Exhibit 145 is a Supervisor's Guide to Handling Grievances and instructs supervisors in the proper approach to discipline. The supervisors in this case showed little knowledge of or appreciation for the guidance given in that document.

The essence of the plaintiff's case for retaliation is that Supervisor Reece became hostile to him and imposed unfair and unwarranted discipline because he was assisting Ms. Rivera in her discrimination claim against Ms. Reece. Ms. Reece denied such motivation in her testimony and professed a lack of knowledge of Mr. Matthews' role in helping Ms. Rivera with her EEO complaints. The evidence contradicts the assertion of lack of knowledge. In April, when Mr. Matthews was meeting with Ms. Rivera to help her with her paperwork on her claim, Ms. Reece interrupted them and ordered Mr. Matthews back to his work station. In her affidavit, dated October 13, 1997, given during the EEO investigation of Mr. Matthews' complaint, Ms. Reece refers to Tracy Matthews as "the appointed bodyguard of Ersilia Rivera" and in saying that she had no recollection of an offensive statement attributed

6

to her by Mr. Matthews, Ms. Reece wrote that at one point Tracy Matthews said "he would make my life miserable if I took any kind of action or discipline towards Ersilia Rivera" and wrote further that because Ms. Reece did take action, Tracy Matthews is "trying to flood me with paperwork & misc. actions" (Exhibit 155).

The offensive statement denied by Reece but testified to by Mr. Matthews, Michael Orrins and Stephen Bartels was that in referring to attention being given to Ms. Rivera by Matthews and others, Ms. Reece said "I wish one of you two would just go fuck her and get it over with." The plaintiff used that statement in support of Ms. Rivera's claim of sex discrimination and the AJ considered it as significant evidence of that improper motivation for the April 3, 1997, letter of warning.

What the totality of the circumstances shown by the evidence in this case reveals is that Patricia Reece resented Ersilia Rivera and acted inappropriately based on a perception that Ms. Rivera's youth and appearance made her attractive to the male clerks, particularly Mr. Matthews and Mr. Kuckelman. It is also clear that Clinton Perry was influenced by Ms. Reece in forming his opinions concerning Tracy Matthews. Mr. Matthews aggravated the antagonism with his supervisors by taunting them and continuing to challenge their authority on repeated occasions.

The plaintiff had quarrels with other craft employees. A disputed election at the local union was set aside by the Department of Labor and a new president was selected in a new election in February, 1997. Tracy Matthews was on the losing side of this bitter dispute and Steve Kuckelman was active in supporting the winner.

The internal political struggle carried over to the workplace. At a union meeting in May, 1977, Mr. Kuckelman and Mr. Matthews came to blows. Mr. Matthews injured Mr. Kuckelman in that fight, resulting in a criminal prosecution of Tracy Matthews.

Earlier, Ms. Reece had instructed Mr. Matthews, Mr. Kuckelman and Mr. Smith to "stay away from each other" in the workplace. The lack of specifics in the supervisor's instruction resulted in difficulty with both Mr. Kuckelman and Mr. Matthews complaining of violations by the other one. With both men working on the same shift, it was impossible to avoid incidents which could be perceived to be violations of this ambiguous instruction.

Ms. Rivera was a factor in the disagreements between those two employees and in their physical altercation. In April, Mr. Kuckelman sent a birthday card to Ms. Rivera at her home to the annoyance of her husband who was suspicious about a possible relationship. Ms. Rivera told Mr. Matthews of this occurrence and he perceived it as an attempt by Mr. Kuckelman to cause problems with Ms. Rivera's marriage.

Mr. Matthews and Ms. Rivera had a friendship that did not involve intimacy. The disciplinary actions against both of them were, in part, the result of a misperception of their relationship. Supervisors of both shifts saw them together during the overlap period and the failure to follow instructions reports as the bases for suspensions and the notice of removal were the result of unfounded suspicions.

Tracy Matthews' clashes and conflicts with his supervisors and co-workers

caused him stress with physical consequences. He went to his doctor who supported the plaintiff's need for absence to relieve the stress of the workplace, without providing specifics as to diagnosis, treatment or prognosis.

On the forms provided by the Postal Service, the doctor wrote as "medical facts" that Mr. Matthews had "loss of ability to concentrate/perform normal work duties," beginning January, 1997, and required to be off work intermittently for occasional brief absences (Exhibits 80 and 81). Those forms were dated May 2, 1997. In June, 1997, a doctor wrote that Mr. Matthews had "anxiety episodes" requiring occasional work absence (Exhibit 82).

Other forms to the same effect were submitted under dates of July 18, 1997, (Exhibit 84), January 22, 1998, (Exhibit 85), and March 8, 1999, (Exhibit 86). In the last of these, the doctor reported that the condition commenced in January, 1997, and the possible duration was "2-3 years." The plaintiff walked off the job on several occasions, asserting his right to do so under the FMLA. In October, 1998, his supervisor, Willie Washington, ordered him to work near Mr. Smith. Mr. Matthews refused, saying that to do so would violate the instructions they had received to stay away from each other. Mr. Washington said he had not seen documentation of any such instruction. Mr. Perry requested FMLA leave for the day and Mr. Washington refused, saying he did not have any knowledge of support for such leave. Mr. Matthews walked off the job and was marked absent without leave for the following day (Exhibit 92). This incident is the subject of the second claim by the plaintiff–a

FMLA violation. There is a dispute as to whether the FMLA forms filed for Mr. Matthews were sufficient to support his position that he could absent himself whenever he felt the need to do so to relieve stress and anxiety. There is some dispute as to its validity as to form and content.

This dispute is, in itself, illustrative of the entire conflict. Mr. Washington had 26 years of service in the U.S. Army. He was rigid in insisting on documentation but the other Postal Service supervisors and managers were very lax in following prescribed procedures. Supervisors Reece and Perry initiated disciplinary actions for rules violations they could not explain other than the generic classification of failure to follow instructions. They and those who approved their actions shared a hostility toward the plaintiff and were eager to find some cause to remove him from his employment. To recover on his Title VII claim, Mr. Matthews must prove that such hostility was motivated by his support of Ms. Rivera's claim of gender discrimination. The evidence does not support that finding. The unwarranted and ill advised disciplinary actions taken against Mr. Matthews resulted from anger and irritation by poorly trained supervisors who were reacting to the continuing contumacious conduct of a rebellious employee. That is not a violation of Title VII. The FMLA claim fails because the plaintiff has not shown that his medical reports were sufficient to justify his claim to declare an absence whenever he felt like it.

The plaintiff has not proven economic damages in this case. His claim for compensatory damages fails because the proof of retaliatory motive is not sufficient.

The retaliation shown in this case is not for engaging in the protected activity of supporting the EEO charges of sex discrimination; it is for the defiance of authority by Tracy Matthews in his contumacious conduct.

Willie Washington and Earl Mayberry were named as defendants in the FMLA claim. This Court earlier ruled that the statute does not make individual supervisors liable for a violation and orally dismissed them as defendants.

Upon the foregoing, it is

ORDERED that the plaintiff's claims are dismissed for failure of proof. Judgment for the defendants will enter accordingly, without the award of costs.

Dated: July 11th, 2005

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge